thank you may it please the court I wanted to say the first thing I want to say is that if it weren't for my friend the Attorney General I wouldn't even be here because somehow my computer I'll blame the computer lost the link and I emailed her at nine o'clock last night saying help help and she sent me the link oh we appreciate collegiality between counsel so congratulations more than that too because when you pointed out correctly that there were some things that it should have been in the excerpt of record she did it all so there okay so I have to get that I had to say that first and then launching into this I judge Smith I can't forget the last time I was actually orally arguing in front of you it was a couple of years ago and and it involved you know this is a strange way to approach oral argument talking about old case but I have to do it because this may be a similar situation where you did my work for me it was the case where the individual had all his materials taken away from his cell and he couldn't file his petition timely and I missed that there's small print that says wait a minute he could have had several cubic feet and your staff saw that and I didn't and you pointed that out to me at oral argument and I ended up sitting down quickly and and and somehow you know in this kind of work there's this wonderful quote from this from Samuel Johnson I bet that name is familiar to you he was a great writer in the 1700s yeah judge judge Clifton and I knew him well oh okay well I know words actually actually motivate just about everything I do and especially this quote the sight of the gallows focuses the mind wonderfully and oral argument is in a way the sight of the gallows and there's a different focus when it gets close to and of course in that case where where I argued I never did see it till you pointed it out but I realized that the declaration of Peter Kergel which the AG got in the magistrate court really does help me and I see it because all I had to prove was that there was a latent print on that bottle now mr. Kergel he told me that back in 2015 and and I put that in my declaration there's a print and the prosecutor who is sadly deceased now I couldn't ever reach him and not and the trial attorney they're both gone they they're both not on the planet and so there was a little difficulty a lot of difficulty in there because I really all I needed to I should have my point is the Supreme Court of California should have granted my an order to show cause because there was a print and the prosecutor said and his investigator told the jury there wasn't and let me ask you this you know we go way back and her friends and everything like that let me be candid with you here this all right you you got a situation here that's a little bit different yes there was a print but as you well know is a very experienced lawyer there are prints and there are prints in this case the evidence showed that the your client was wearing gloves so there wouldn't be any prints you also don't know if there were prints whose prints they were there could have been any number of things from a delivery man to the of the beer to somebody else in the household you don't know but the reality is it's not at all clear that it would have matched or not matched your clients even if it were you know able to if you they could determine it and as you know materiality and how much it would affect the verdict is what counts here especially under AEDPA so as an expert in AEDPA will you tell me please given what we've got with this the nature of this print why this should make a difference why it should help your client okay I will focus on that I will focus on them the gloves I'm focusing on the gloves the the poor victim in this case and she was a victim said that he washed his face in the sink during this you don't wash your face with gloves on the gloves came off and that's in that's in the record and at what point did he wash his face before or after the I'll call them anal insults right well you know that's hard to that's that's really hard to pin down because there he stayed around he didn't you know it was a it was a crazy situation I remember there were the police came and there were flashing lights outside and he saw them this this intruder I don't I can't answer that question directly and I think it's only speculation I don't think given that fact and given your expertise in AEDPA your client I believe has the burden to show that no fair-minded jurist could conclude what was concluded by the California Courts of Appeal and the District Court and the like it isn't that correct okay I'll focus on that now I focused on the gloves now I'll get to AEDPA and I oh I don't want to run out of time and I'm getting here fast how much you want to save how much time oh gosh at least two minutes okay I'll help you thank you thank you but here's the point it was when I filed my habeas and it was a petition for review from a summary denial under people versus Duvall the Supreme Court of California had to assume everything I said was true you see that's that's the whole thing and they saw a problem and they asked for that whenever the Supreme Court asks you and your opponent for an more you know you're on the a-list you know what I mean in other words there they said oh there's something here we better we better get some more more from both counsel and I got that and I and that's in the thanks to my friend the Attorney General that is in your excerpt of record it wasn't before and that was really on me but my my answer has everything in it the answer that I replied to the state Attorney General and my petition for review they had to reasonable to use those magic words that's what it was unreasonable for the Supreme Court not to grant an order to show cause because I proved that there was a print and that the district attorney said to the jury there's no print he called out the deceased defense attorney and his investigator told the was that that information had been withheld from your clients counsel at the time because you're the one that came up with with the card and this thing's stored by your client well it was he was dead he died he was dying during the trial you're not answering my question well I'm telling me what establishes that the information on the card which your client possessed hadn't been turned over to counsel previously okay can I ask them I'll try to answer that he would if he had that card he would have screamed bloody murder when the prosecutor said there was no print he said wait at some point he got the card we had to have gotten the card because your client had it my that's all speculation your honor no it's not you're the one that found the card how did your client how did you find the card it was in your client's possession it was in a box that and there were multiple attorneys in this you understand it was not in my client's possession my client was in custody he never had possession of that so you can't say that judge Clifton it was not if it wasn't his possession it was his counsel's possession and I know it's going to be your burden to tell us why it was we should infer from that that it had not been turned over at the appropriate time because it's incomprehensible that this attorney would have ignored it during that trial that was that was his defense that there was another print that did not could not be traced to his client his whole defense was Saudi right so DDI some other dude did it his whole defense may be unsuccessful too and might be a lie I mean there are lots of alternatives so to tell me it's incomprehensible really doesn't tell me why this proves that it had not been disclosed to counsel on a timely basis judge Clifton I'm running out of time and all shows out of time well why don't we do this let's hear from the Attorney General and out of the goodness of our hearts we're going to give you a minute to respond I appreciate the Attorney General tells us what her version of this is thank you so let's hear from the Attorney General and to whom we are the other gratitude for being such a collegial colleague well good morning Your Honor's Deputy Attorney General Blythe Leskay for respondent may it please the court I don't have the pleasure of knowing any of you personally but hopefully will at some point in the future the fingerprint evidence in this case was not suppressed it was not exculpatory it was not material and there was no false evidence presented in this case the California Court of Appeals rejection of petitioners Brady claim was reasonable because it fails on every element first it was not suppressed we know that as Judge Clifton mentioned it was found located by counsel in petitioners file whether it was petitioners personal file was in his sister's garage the only way he could have gotten it is from his claim but we also know from the record that this evidence was discussed at in court it was discussed pretrial and discovery it there was a discovery compliance hearing that was taken off calendar which of course suggests that discovery was complied with and it was discussed in testimony counsel was very much aware of this evidence and there's no way on a case where your defense is evidence it was also not exculpatory the intruder in this place were gloves that fact was undisputed at trial at every point therefore any print that may have been found was necessarily not the attackers additionally the beer bottle was taken from the victim's home we're talking about a weapon that was almost certainly touched by the victim herself could have been touched by other people in the household she obviously would have bought it from a store where it could have been touched at any point by dozens of people along along its road to getting to where it was used as the weapon and I ask you a question of course your honor didn't the didn't the victim affirmatively identify her assailant at the scene and in open court yes well that isn't your best argument that none of this makes a difference yes and that is exactly where I was getting to so thank you it was completely immaterial we have extraordinarily strong identification evidence in this case from the victim who was the perpetrator's wife of over 16 years we're not talking about a stranger identification in this case her identification was detailed it was she saw him of course during the perpetrate perpetration of this crime or actually afterwards when he removed his mask and she saw him in the mirror and just talking about that point in the in the crime for a moment and responding to counsel's argument that there's no reason that there's no evidence and there's no reason that the perpetrator would have had to take off his gloves when he went into the bathroom to rinse his face because he was sweating profusely he was wearing rubber latex gloves and one would assume that somebody who goes to the point trouble of wearing gloves to prevent fingerprints would have left those gloves on wouldn't have needed to take them off to splash his face and in any event that occurred after the attack at issue here when with the bottle the victim's identification was extremely detailed as I said she recognized even the second he burst in through the door she said she knew it was him because he had done that sort of thing before she recognized him based on his size his hands his voice the words he used he sued their baby back to sleep in the midst of this attack that alone more than anything else suggests that it was exactly who she said it was additionally her identification of him was corroborated her very first act after he left was to go to the neighbor's house and call petitioners apartment where she one would expect at 230 in the morning that if she had called over there and it wasn't him that he would have been asleep in bed instead he wasn't seen until minutes later wide awake wearing the same clothes as the attacker and sweating profusely just as we know the she had described the attacker would had done the immateriality of course goes to both of petitioners claims additionally there was no false testimony the definite the detective's testimony in this case and the California Court of Appeals rejection of the Nippu claim was also reasonable fingerprint evidence as your honor mentioned is important only to the point that it is that the context shows its importance where an attacker wears gloves with item is a common item that was taken from the victim's home and could have been touched by any number of people before the perpetrator touched it that kind of context and the circumstances of this case show that the fingerprint evidence here was minimally probative at best in short this petitioners claims fail at every turn he had the evidence it doesn't suggest his innocence it doesn't show his testimony was false and it wouldn't have changed anything the fingerprint evidence is a red herring and if there are no further questions I would submit thank you well do either of my colleagues have additional questions for the Attorney General hearing none then mr. Curry we're gonna give you one minute and I know you're gonna make brilliant use of it thank you thank you for that faith um number I'll start right off with the witness the poor victim totally recanted her in-court testimony and that's in the record totally recanted it and she had good reason in her declaration for the recantation and her anger at her husband okay so that that recantation and all the trial judge said was I don't believe it he didn't call her in or anything he the gloves that's a red herring because the gloves were off number three all you have to do and I've done trial work is convince one juror jurors love fingerprint evidence they do anybody who's ever done any trial knows that jurors want science and here was something that cast doubt cast doubt that and affirmed cast out on the prosecution's case in fact very much so counselor your minute has been used we thank you for your additional argument you either of my colleagues have additional questions for mr. Corey very well we thank you both for your argument in the case of panola vs. Koenig is
judges: CLIFTON, SMITH, Murphy